**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

BRUCE ARMSTRONG,

        Defendant.

No. CR 11-3023-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION IN
LIMINE**

<u>FILED UNDER SEAL</u>

————————————

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A.*  *Rule 104 And Preliminary Question Of Admissibility* . . . . . . . . . . . . 4
   *B.*  *Evidence No Longer At Issue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *C.*  *Evidence Challenged On Relevance Or Prejudice Grounds* . . . . . . . . . 6
      *1.*  *Relevance and unfair prejudice rules* . . . . . . . . . . . . . . . . . . 6
      *2.*  *Drug activity before the period of the conspiracy* . . . . . . . . . 10
      *3.*  *Remarks of officers on recordings of controlled buys* . . . . . . 14
   *D.*  *Evidence Challenged As Hearsay* . . . . . . . . . . . . . . . . . . . . . . . . . 15

*III.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

In an Indictment (docket no. 2), filed June 23, 2011, Bruce Armstrong, the sole defendant, is charged with eight offenses involving methamphetamine and firearms. Somewhat more specifically, **Count 1** charges that, from about January 2011 through May 2011, defendant Armstrong conspired to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (what I will call a methamphetamine mixture) that contained 50 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. § 846. **Counts 2** through **6** charge that, on or about specified dates in March, April, and May 2011, Armstrong distributed specified quantities of a methamphetamine mixture that contained specified quantities of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and either 841(b)(1)(B) or 841(b)(1)(C). **Count 7** charges that, on or about May 25, 2011, Armstrong possessed with intent to distribute 50 grams or more of a methamphetamine mixture that contained 5 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Finally, **Count 8** charges that, on or about May 25, 2011, Armstrong possessed four firearms in furtherance of a drug-trafficking crime, that is, the crimes charged in **Counts 1** through **5**, in violation of 18 U.S.C. § 924(c).[1]

---

[1] In an e-mail, I pointed out to the parties what I perceived to be a problem with **Count 8**, the firearm charge. That count alleges possession on May 25, 2011, of a firearm (actually, one or more of four firearms) in furtherance of the drug-trafficking crimes alleged in **Counts 1** through **5**, but not the drug-trafficking crimes alleged in **Counts 6** and **7**. The drug conspiracy in **Count 1** allegedly ran from January to May 2011, so that the possession of the firearms allegedly occurred on a single date within the time frame of the conspiracy. On the other hand, the substantive drug offenses in **Counts 2** through **5** allegedly occurred in March and April 2011, that is, prior to the date of the alleged

(continued...)

On August 22, 2011, when Armstrong was represented by different counsel and the trial on the charges against him was set to begin on September 6, 2011, Armstrong filed a Motion In Limine (docket no. 15), seeking to exclude several categories of evidence, primarily on the grounds that the evidence was irrelevant or that the probative value of the evidence was substantially outweighed by its potential for prejudice. No timely response to that Motion In Limine was filed. However, the day after Armstrong filed his Motion In Limine, Armstrong filed a motion for a new attorney, which was granted on August 26, 2011. *See* Order (docket no. 21). Also on August 26, 2011, out-going counsel filed a Motion To Continue Trial (docket no. 22), which was granted, and the trial was reset to begin on October 3, 2011. *See* Order (docket no. 23). After additional continuances, trial was eventually set to begin on February 8, 2012. *See* Order (docket no. 40).

On January 12, 2012, in the course of my review of cases set for trial in January and February, it came to my attention that the prosecution had not yet responded to the Motion In Limine filed by Armstrong's prior counsel. In an Order (docket no. 45), I noted that Armstrong's current counsel had repeatedly indicated, in interim Status Reports, that the Motion In Limine was awaiting ruling by the court, which I concluded was an indication that present counsel intended to stand on prior counsel's Motion In Limine.

---

[1](…continued)
possession of the firearms in furtherance of those offenses. I asked the parties to explain how I should handle the strange situation of a charge of possession of firearms on a particular date in furtherance of substantive drug offenses that allegedly occurred on discrete dates one or two months earlier, as well as whether I was right in assuming that there is simply no evidence to connect the possession of the firearms on May 25, 2011, to the substantive drug offenses on May 25, 2011, charged in **Counts 6** and **7**. On January 27, 2011, after receiving a response from the prosecutor concerning this matter, which I concluded raised more questions than it answered, I entered a Sealed Order (docket no. 51) directing supplemental briefing relating to the scope and proof of **Count 8**.

Under the circumstances, I deemed it appropriate to set a deadline of January 25, 2012, for the prosecution to file a response to Armstrong's Motion In Limine. *See id.*

The prosecution did, in fact, file a Response To Defendant's Motion In Limine (docket no. 49) on January 25, 2012. In that Response, the prosecution resisted exclusion of some of the evidence that Armstrong challenges, but represented that other challenged evidence simply would not be offered.

I have considered Armstrong's Motion In Limine on the written submissions.

## II. LEGAL ANALYSIS

### A. Rule 104 And Preliminary Question Of Admissibility

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I conclude that preliminary determination of the admissibility of the evidence put at issue in defendant Armstrong's Motion In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, I turn to the merits of Armstrong's evidentiary challenges.

## B. Evidence No Longer At Issue

In light of the prosecution's belated Response, it appears that the admissibility of some of the evidence that Armstrong challenges is no longer in dispute. I will address that evidence first.

In the second of two paragraphs number "2." in Armstrong's Motion, prior counsel asserted that "Informant 2," identified for the first time in certain discovery materials disclosed on August 15, 2011, was a client of his office, so that, if that witness was called, he would have a conflict of interest and would be required to withdraw. In its Response, the prosecution states that there is no longer any conflict of interest, because Armstrong's prior counsel has been allowed to withdraw and has been replaced with new counsel. Moreover, the prosecution represents that it does not intend to call "Informant 2" as a witness. To the extent that Armstrong's Motion In Limine sought to exclude evidence from "Informant 2," that portion of his Motion is now denied as moot.

In the paragraph numbered "6." in Armstrong's Motion, he seeks to exclude evidence of a prior misdemeanor conviction for possession of marijuana. The prosecution represents that it does not, and never did, intend to present evidence of this prior conviction, and that it had so notified both Armstrong's prior counsel and his new counsel. Under these circumstances, this portion of Armstrong's Motion In Limine is also denied as moot.

Similarly, in the paragraph numbered "7." in Armstrong's Motion, he seeks to exclude evidence of two uncharged controlled purchases of methamphetamine from him in December of 2009, that is, outside the time of the charged conspiracy. The prosecution represents that it does not, and never did, intend to present evidence of these uncharged offenses, and that it had so notified both Armstrong's prior counsel and his new counsel.

Again, under these circumstances, this portion of Armstrong's Motion In Limine is also denied as moot.

Some of the evidence that Armstrong challenges does remain in dispute. Armstrong challenges most of that evidence on relevance or prejudice grounds, but he also challenges some of it on hearsay grounds. I turn to consideration of those remaining categories of evidence.

## C. Evidence Challenged On Relevance Or Prejudice Grounds

Before addressing the merits of Armstrong's challenges to evidence based on relevance and prejudice, I will summarize the standards for exclusion of evidence on relevance and prejudice grounds under the Federal Rules of Evidence and applicable case law.

### 1. Relevance and unfair prejudice rules

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.[2]

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

---

[2]Rule 401 and Rule 402 were both amended in the course of amendments to the Federal Rules of Evidence in 2011, effective December 1, 2011. Like other amendments to the Federal Rules of Evidence in 2011, these amendments were "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," were "intended to be stylistic only," and were not intended "to change any result in any ruling on evidence admissibility." FED. R. EVID. 401, Advisory Committee Notes, 2011 Amendments; FED. R. EVID. 402, Advisory Committee Notes, 2011 Amendments.

> The court may exclude relevant evidence if its probabtive value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.[3] As the Eighth Circuit Court of Appeals recently explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d at 676, 681 (9th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged

---

[3]Stylistic amendments to this rule also became effective on December 1, 2011.

offense and revealed grisly or violent behavior that made the defendant appear "dangerous").  Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'"  *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)).  "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion."  *Myers*, 503 F.3d at 681 (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord Muhlenbruch*, 634 F.3d at 1001 ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

Armstrong also asserts that some of the evidence should be excluded pursuant to Rule 404(b).  As the Eighth Circuit Court of Appeals has recently explained,

> Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  It does not, however, prohibit the admission of such evidence if it is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*  Whether Rule 404(b) prohibits the admission of a particular piece of evidence depends, therefore, on the purpose for which it is offered.  *See Huddleston v. United States*, 485 U.S. 681, 687, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988) ("Generally, [Rule 404] do[es] not flatly prohibit the introduction of such evidence, but instead limit[s] the purpose for which it may be introduced.").

*United States v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011).[4] As the Eighth Circuit Court of Appeals has also explained, "'Admissibility of 404(b) evidence is governed by four factors: the evidence must be 1) relevant to a material issue; 2) proven by a preponderance of the evidence; 3) of greater probative value than prejudicial effect; and 4) similar in kind and close in time to a charged offense.'" *United States v. McGilberry*, 620 F.3d 880, 887 (8th Cir. 2010) (quoting *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005)); *Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000) (applying the same factors to determine the admissibility of prior acts of the harasser in a discrimination suit, but excluding evidence of the harasser's prior affairs with customers as only minimally relevant to whether he had a motive to accost a co-worker, owing to lack of similarity, substantial temporal separation, and inflammatory nature). "'There is no absolute rule for the number of years that can separate evidence of offenses admitted under Rule 404(b). Instead [courts] examine the facts and circumstances of each case and apply a reasonableness standard.'" *Id.* (quoting *United States v. Thomas*, 398 F.3d 1058, 1063 (8th Cir. 2005)).

Even where evidence might otherwise be admissible pursuant to Rule 404(b), however, it may still be subject to exclusion, if its probative value is substantially outweighed by its potential for prejudice or confusion. *See Maxwell*, 643 F.3d at 1102 (explaining that such a balancing analysis may be "folded into" or separate from determination of whether evidence is admissible pursuant to Rule 404(b)); *see also Clark*, 295 F.3d at 814 (holding that Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same),

---

[4]Although the court in *Maxwell* cited the version of Rule 404(b) prior to amendments in 2011, the amendments to Rule 404, like other amendments to the Federal Rules of Evidence effective December 1, 2011, were intended to be stylistic only.

*cert. denied*, 525 U.S. 1089 (1999). In the Rule 404(b) context, "[a]lthough an issue for which an item of evidence is offered as proof need not be in dispute for the item to be admissible, the probative value of an item of evidence is calculated with respect to the other evidence available to prove the same point." *Clark v. Martinez*, 295 F.3d 809, 813 (8th Cir. 2002) (citations omitted).

Where evidence may otherwise be inadmissible pursuant to Rule 403 or 404(b), the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

With these rules in mind, I turn to consideration of the admissibility of the evidence that Armstrong challenges on relevance or prejudice grounds.

### 2.    *Drug activity before the period of the conspiracy*

In the first of two paragraphs numbered "2." in his Motion, Armstrong seeks to exclude information from "Informant 1" that he had purchased methamphetamine from Armstrong "a few times," in quarter gram or smaller quantities, with the last such purchase on November 2, 2010. Similarly, in paragraph "8." of his motion, Armstrong seeks to exclude evidence from "Informant 3" that he began using methamphetamine with

Armstrong in September of 2010, then began buying methamphetamine from Armstrong in December 2010, and did so about "1/2 dozen times." In his Motion, Armstrong asserts, baldly, that this evidence is unfairly prejudicial and should be excluded pursuant to Rule 403. In his supporting brief, however, he clarifies that the potential for unfair prejudice from this evidence is that jurors might improperly attribute drug quantities from outside of the conspiracy period to the conspiracy or simply rely on this evidence as showing his propensity to commit criminal acts.

Although the prosecution represented that it did not intend to present other confidential informants who made controlled buys from Armstrong in December of 2009, as set out in paragraph "7." of Armstrong's Motion, the prosecution does resist exclusion of the prior drug activity identified in paragraphs "2." and "8." The prosecution asserts that the evidence from "Informant 1," although it involves drug activity from outside the period of the charged conspiracy, is relevant, probative, and not unfairly prejudicial, with no explanation of why this is so. As to the evidence from "Informant 3," the prosecution argues, somewhat more expansively, that the evidence of drug activity is from just outside the period of the drug conspiracy and involved the same informant who conducted all of the controlled buys from Armstrong that are charged as substantive distribution counts. Thus, the prosecution argues that the evidence from this informant is relevant, probative, and not unfairly prejudicial, because it involves the same drug, methamphetamine, the same kinds of conduct, distribution and/or conspiracy to distribute methamphetamine, and shows the informant's knowledge of and relationship with Armstrong, including their drug use.

I recognize that prior drug activity, and sometimes even subsequent drug activity, of the defendant may be admissible pursuant to Rule 404(b). In *United States v. Jones*, 145 F.3d 959 (8th Cir. 1998), the Eighth Circuit Court of Appeals reiterated that

"'[e]vidence of similar drug activity is admissible in a drug prosecution case because "a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged."'" *United States v. Jones*, 145 F.3d at 964. The court held that this was true, even of *subsequent*, uncharged drug activity. *Id.* In *United States v. Logan*, 121 F.3d 1172 (8th Cir. 1997), the Eighth Circuit Court of Appeals held that "evidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element." *Logan*, 121 F.3d at 1178; *see also United States v. Ironi*, 525 F.3d 683, 687 (8th Cir. 2008) (recognizing that even possession of user-quantities of a controlled substance is relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs); *United States v. Hessman*, 493 F.3d 977, 983 (8th Cir. 2007); *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (noting that the Eighth Circuit Court of Appeals has "frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense").

Nevertheless, in this case, the prosecution has completely failed to identify any permissible reason under Rule 404(b) for admitting the evidence of the prior drug activity identified in the first of the two paragraphs numbered "2." of Armstrong's Motion. Instead, the prosecution simply recites that such evidence "is relevant, probative and not unfairly prejudicial under Rule 403 of the Federal Rules of Evidence." Prosecution's Response To Defendant's Motion In Limine (docket no. 49) at 1. The prosecution's somewhat more expansive response to Armstrong's attempt to exclude the evidence of the prior drug activity identified in paragraph "8." of Armstrong's Motion also falls short of identifying a permissible reason under Rule 404(b) for admitting that evidence. Although the prosecution is correct that this evidence shows the *informant's* knowledge of and

relationship with Armstrong, which may make the informant's testimony about Armstrong's drug activity within the time frame of the conspiracy more credible, the proper Rule 404(b) purpose for which this evidence may be offered is not to show the *informant's* knowledge of drug activity, but to show *Armstrong's* knowledge of and intent to participate in drug activity. *See* FED. R. EVID. 404(b) (evidence of prior acts is not admissible to show the actor's character or action in conformity therewith, but is admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). The prosecution also asserts "this evidence/testimony is relevant evidence of defendant's commission of a charged offense (methamphetamine distributions and/or conspiracy to distribute methamphetamine)." Prosecution's Response To Defendant's Motion In Limine (docket no. 49) at 4-5. While one might read this language to suggest that the prosecution believes that the evidence shows Armstrong's knowledge of and intent to commit drug transactions, I read it simply as relying on the evidence of prior drug activity to show "that on a particular occasion [Armstrong] acted in accordance with the character" of being a drug dealer, a purpose expressly prohibited by Rule 404(b). *See* FED. R. EVID. 404(b). More should be required to demonstrate admissibility of evidence pursuant to Rule 404(b) than simply mouthing the words "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," as purposes for which the evidence is offered, and the prosecution does not even mouth the words. The prosecution falls well short of *showing* that the evidence does, in some way, show Armstrong's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as purposes for which the evidence is offered. Therefore, the prosecution has not shown that the evidence of the prior drug activity challenged here meets the first factor in the test for admissibility of the evidence in question pursuant to Rule 404(b), as well as

Rule 403, relevance to a material issue. *See McGilberry*, 620 F.3d 887 (stating factors for determining the admissibility of similar acts evidence pursuant to Rule 404(b)); *Muhlenbruch*, 634 F.3d at 1001 (stating that Rule 403 requires the balancing of probative value of evidence against its potential for unfair prejudice).

Therefore, paragraphs "2." and "8." of Armstrong's Motion seeking to exclude evidence of his drug activity outside the period of the charged conspiracy are granted.

### 3.    *Remarks of officers on recordings of controlled buys*

In numbered paragraph "4." of his Motion, Armstrong seeks to exclude from recordings of controlled buys introductory and concluding remarks of law enforcement officers of what was about to occur and what had transpired. He contends that these remarks are not evidence and, therefore, not relevant, so that they should be excluded pursuant to Rule 401. The prosecution points out that Armstrong has not identified any specific recordings or comments and that the nature of the remarks, if any, differs from transaction to transaction. The prosecution also asserts that these remarks are merely "documentary" in nature, because they identify the time, date, and sometimes the circumstances of the recording in question, and that they actually appear to be more helpful than prejudicial to the determination of the relevance of the evidence. The prosecution asserts that potentially prejudicial statements or remarks can also be redacted from any recording or corresponding transcript.

I note, first, that Armstrong has not adequately identified any introductory or concluding comments on any recording that he believes are unfairly prejudicial. Nevertheless, I note that the authenticity of the recordings, including the circumstances in which they were made, should be established through testimony of a witness present at the time that the recordings were made. *See, e.g., United States v. Wells*, 347 F.3d 280, 288 (8th Cir. 2003). Thus, any "documentary" comments on the recordings serve no non-

cumulative purpose.  Moreover, "'[t]he tape recording itself . . . is the primary evidence of its own contents,'" *see United States v. Gutierrez*, 367 F.3d 733, 735-36 (8th Cir. 2004) (noting that such language is patterned after Eighth Circuit Manual of Model Criminal Jury Instructions § 2.06, and that it is appropriate for recorded conversations in English), not the comments of a law enforcement officer about what the officer believed might happen or may have happened.  Thus, such comments are potentially substantially more prejudicial than probative, as they might invite jurors to accept the officer's expectations or conclusions as the truth, rather than what the jurors find in the contents of the recordings. *See Muhlenbruch*, 634 F.3d at 1001 (evidence is unfairly prejudicial within the meaning of Rule 403 when it has an undue tendency to suggest a decision on an improper basis). Thus, in an abundance of caution, I will direct the prosecution to redact all introductory and concluding comments by law enforcement officers on the recordings.

This part of Armstrong's Motion is granted.


### D.  Evidence Challenged As Hearsay

The remaining evidence that Armstrong seeks to exclude, identified in the paragraph numbered "3." in his Motion, is the comment of a female in the recording of a controlled buy on May 25, 2011, suggesting that Armstrong take a "piece" with him.  Armstrong asserts that law enforcement officers testified at the preliminary hearing that the "piece" was a weapon.  The prosecution asserts that the full context of the statement/question from the female, since identified as Armstrong's neighbor, Crystal Rashedi, who will be called as a witness at trial, shows that, during a controlled buy, a confidential informant was not able to obtain methamphetamine from Armstrong until Armstrong left his residence to obtain methamphetamine from a source.  During a conversation among the informant, Rashedi, and Armstrong, Armstrong's response to Rashedi's statement that he should take

a "piece" was, "I should when I go down there. . . ." The prosecution asserts that there was then further discussion between Armstrong and Rashedi on the same topic. Finally, the prosecution asserts that during this transaction and in the context of these statements, Armstrong was observed by the informant to take his larger handgun (a .357 handgun subsequently seized by law enforcement), as well as a smaller handgun (a .22 caliber two-shot derringer), put the .357 handgun in his pocket, leave to obtain a supply of methamphetamine, and return a short time later with methamphetamine from which the informant then obtained a portion.

Armstrong argues that Rashedi's comment about the "piece" is hearsay and, consequently, inadmissible pursuant to Rule 802 of the Federal Rules of Evidence. Somewhat more specifically, he argues that the statement made by Rashedi of her impression that Armstrong should take a "piece" is an out-of-court statement offered to prove the truth of the matter asserted—that she believed that Armstrong should take a "piece." He also argues that this evidence is inadmissible pursuant to Rule 403 of the Federal Rules of Evidence, because Rashedi's thoughts or statement have no bearing on Armstrong's thoughts or intent. The prosecution contends that the evidence from the recording, and testimony consistent with it, is not hearsay pursuant to Rule 801(d)(1) of the Federal Rules of Evidence, because it is a prior statement by a witness, and the witness is available to testify and be cross-examined regarding the statement. The prosecution also contends that the evidence is relevant, probative, and not unfairly prejudicial under Rule 403.

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as follows:

> **(c) Hearsay.** "Hearsay" means a statement that:
>     **(1)** the declarant does not make while testifying
> at the current trial or hearing; and

**(2)** a party offers in evidence to prove the truth of the matter asserted in the statement.

FED. R. EVID. 801(c).  Rule 801(d)(1) states the following:

> **(d) Statements That Are Not Hearsay.**  A statement that meets the following conditions is not hearsay:
>> **(1) A Declarant-Witness's Prior Statement.** The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>>> **(A)** is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
>>> **(B)** is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>>> **(C)** identifies a person as someone the declarant perceived earlier.

FED. R. EVID. 801(d)(1) (as amended effective December 1, 2011).[5]

Only subsection (d)(1)(B) could be applicable here, because the prior statement was not given under penalty of perjury at a trial, hearing, or other proceeding, *see* FED. R. EVID. 801(d)(1)(A), nor did it identify a person as someone the declarant perceived earlier, *see id.* at (d)(1)(C).  A predicate for application of Rule 801(d)(1)(B) is that the declarant must testify at the trial and be subject to cross-examination concerning her out-of-court

---

[5]This amendment to Rule 801, like other amendments to the Federal Rules of Evidence in 2011, was "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," was "intended to be stylistic only," and was not intended "to change any result in any ruling on evidence admissibility."  FED. R. EVID. 801, Advisory Committee Notes, 2011 Amendments.

statement. *See United States v. Bordeaux*, 400 F.3d 548, 557 (8th Cir. 2005). The out-of-court statement must also have been made before any improper influence to encourage the witness to lie had been brought to bear. *Id*. Moreover, the purpose of Rule 801(d)(1)(B) evidence is to rebut an alleged motive to lie; "[i]t is not to be used to bolster the veracity of the witness's story as told on direct examination," nor to "bolster a discredited witness or to counter all forms of impeachment." *United States v. Hoover*, 543 F.3d 448, 454 n.2 (8th Cir. 2008). Thus, "prior consistent statements may be admitted for rehabilitative purposes even if they are not admissible as substantive evidence under Rule 801(d)(1)(B)." *Id*. at 454.

Assuming for the moment that what is at issue is an out-of-court statement being offered to prove the truth of the matter asserted, *see* FED. R. EVID. 801(c) (defining hearsay), it must be Rashedi's statement on the recording that Armstrong should take a "piece." Armstrong has not identified nor sought to exclude any statement from Rashedi that Armstrong did, in fact, take a "piece" when he left the apartment to obtain methamphetamine. That being the case, I cannot properly assess at this point the validity of the prosecution's assertion that the statement actually at issue is not hearsay, pursuant to Rule 801(d)(1). Rule 801(d)(1)(B) cannot be used as a sword, to admit evidence on direct examination, but only as a shield, to rebut an assertion of recent fabrication. *See* FED. R. EVID. 801(d)(1)(B); *Hoover*, 543 F.3d at 454 & n.2. It is not apparent from the present context that Armstrong is asserting, expressly or impliedly, that Rashedi's suggestion that Armstrong take a "piece" during the controlled buy in question was a recent fabrication, nor is there any indication that the statement occurred before Rashedi was subject to any improper influence to encourage her to lie about whether or not she encouraged Armstrong to take a "piece" with him. *See Bordeaux*, 400 F.3d at 557.

On the other hand, it does not appear likely to me that the prosecution is actually offering the portion of the recording including Rashedi's comment that Armstrong should take a "piece" for its truth, that is, that she did believe that Armstrong should take a "piece," so that the statement is not hearsay. *See* FED. R. EVID. 801(c); *United States v. Street*, 548 F.3d 618, 625 (8th Cir. 2008) ("[S]tatements would not be hearsay if they were not offered to prove the matters asserted."). Rather, it appears that the comment is simply part of a recording offered to prove that Armstrong engaged in a controlled buy in the course of which he discussed whether or not he should take a firearm with him when he left to obtain methamphetamine. The evidence that Armstrong did, in fact, take a firearm with him will come from the confidential informant, not from Rashedi's comments about whether or not Armstrong should take a firearm. Thus, it appears unlikely to me that Rules 801(d)(1)(B) and 802 are even implicated by this evidence. Because the purpose for which the out-of-court statement is offered is determinative of whether or not it is hearsay, *see* FED. R. EVID. 801(c)(2); *Street*, 548 F.3d at 625, I must await trial to determine the purpose for which Rashedi's comment is offered and whether it is challenged as a recent fabrication to determine its admissibility under Rules 801(c) and 801(d)(1)(B).

Even if the hearsay rules are not implicated, Armstrong argues that Rashedi's comment that he should take a "piece" should be excluded pursuant to Rule 403 as more prejudicial than probative. He argues that the evidence invites jurors to determine his intent with regard to a firearm based on Rashedi's intent. He cites *United States v. Worman*, 622 F.3d 969 (8th Cir. 2010), in support of this argument. In *Worman*, in which I was the trial judge, in a pretrial ruling on a motion in limine, I excluded statements by the defendant's wife's co-workers that the wife blamed the target of the defendant's pipe bomb for the termination of a contract that the wife's company had with her husband, on the ground that the co-workers' statements were substantially more prejudicial than

probative. I reasoned that the wife's thoughts provided little insight into what the defendant thought or believed, invited unfair bias against him based on his wife's purported animosity, and distracted the jurors from evidence that was more probative of the defendant's own mental state and involvement of the offense. *Worman*, 622 F.3d at 975. At trial, however, I admitted the statements of the co-workers to show the defendant's motive, because if the defendant's wife knew that the target of the pipe bomb had canceled the contract with the defendant, the defendant would also know that. *Id.* The Eighth Circuit Court of Appeals concluded that I got it right the first time, not the second. That court concluded that the statements "unfairly diverted the jury from focusing on [the defendant's] own mental state, intent, motive, or involvement in the crime." *Id.*

Here, however, the prosecution asserts that there is direct evidence that Armstrong shared Radeshi's belief that he should take a firearm with him when he went to retrieve some methamphetamine to give the confidential informant, because Armstrong's response to Rashedi's statement was, "I should when I go down there. . . ," and the confidential informant will testify that Armstrong did, in fact, take two firearms with him. Under these circumstances, Rashedi's comment that Armstrong should take a "piece" with him not only has relatively little probative value on Armstrong's state of mind, it has little or no potential for unfair prejudice, in light of other evidence that more directly demonstrates Armstrong's state of mind and actions. *Cf. Clark*, 295 F.3d at 813 (observing, in the Rule 404(b) context, "[a]lthough an issue for which an item of evidence is offered as proof need not be in dispute for the item to be admissible, the probative value of an item of evidence is calculated with respect to the other evidence available to prove the same point." (citations omitted)). Indeed, this challenge to Rashedi's comment seems like an attempt to make a mountain out of a molehill, when other evidence against Armstrong is the real mountain.

This portion of Armstrong's motion in limine is denied.

### III. CONCLUSION

Upon the foregoing, defendant Armstrong's August 22, 2011, Motion In Limine (docket no. 15) is **granted in part** and **denied in part**, as follows:

1.     The challenge to evidence identified in the first of two paragraphs of the Motion numbered "2." is **granted**;

2.     The challenge to evidence identified in the second of two paragraphs of the Motion numbered "2." is **denied as moot**;

3.     The challenge to evidence identified in paragraph "3." of the Motion is **denied**;

4.     The challenge to the evidence identified in paragraph "4." of the Motion is **granted**;[6]

5.     The challenge to the evidence identified in paragraph "6." of the Motion is **denied as moot**;

6.     The challenge to the evidence identified in paragraph "7." of the Motion is **denied as moot**; and

7.     The challenge to the evidence identified in paragraph "8." of the Motion is **granted.**

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after

---

[6]There is no paragraph numbered "5." in Armstrong's Motion.

completion of trial or any guilty plea, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED.**

**DATED** this 30th day of January, 2012.

_(signature)_

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA